KAREN ROGOVIN v. LOUIS LEIBMAN ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. 69123

Memorandum filed August 9, 1948.

*Charles G. Albom,* of New Haven, for the Plaintiff.

*Sachs, Sachs & Sachs,* and *Edward L. Reynolds,* of New Haven, for the Defendants.

MOLLOY, J. One of the vigorous attacks made by the defendants in this motion to set aside the verdict was to the effect, in short, that due to the quantity and quality of the evidence offered by the defendants in contrast to that offered by the plaintiff the verdict should not be sustained. In other words, that the evidence offered by the defendants was so strong in the respects enumerated in the defendants' brief that the story of the plaintiff was "intentionally or unintentionally untrue." They contend that this is one case where the judge on the basis of his determination of the quantity and quality of evidence should set this verdict aside.

The big question in the case was whether the door in question "stuck" and was therefore rendered difficult to open, whether that condition had existed for a long period of time, and whether those facts, together with the fact that ordinary window glass was used in the door with no wiring or protection over it, violated under all the circumstances the duty which the defendants owed as hotelkeepers to the plaintiff, one of their guests.

It is the fact that the plaintiff's claims of neglect in the construction, care and maintenance of the door in question were dependent upon her story, supported only by that of her mother, father, and one other witness not a member of the family; whereas there was a lot of evidence contradictory of the claim of the plaintiff, her family, and their one lone witness. There is no doubt about this. Yet this is not a case where physical facts are such that there can be no dispute as to them, and where on such physical facts only one conclusion can be reached. Quite to the contrary. The jury, even though there were seventeen or so witnesses in denial of any defective condition as claimed by the plaintiff, could still believe the plaintiff, her mother, father, and the one witness who confirmed their claims. While I quite appreciate the point the defendants make in this regard, I still believe it is not sound.

The second ground of this motion to set aside the verdict is an attack upon the charge. The mere use of window glass alone, or the absence of wiring or protection over the window glass in the door, would not be sufficient to warrant recovery. That was the position of the plaintiff on the trial. It was the maintenance for a long period of time of a door which would "stick," requiring pressure or kicking to open it, which was the nub of the plaintiff's case. It was this condition, taken in connection with the use of thin window glass with no wiring or protection over it, thus altogether making a dangerous condition, which was relied upon by the plaintiff as a violation of the care required under all the circumstances.

As I understand their claim, the defendants' exception to the charge is that the jury might well conclude from the charge that the absence of wiring or protection over the window glass in the door alone was negligence in and of itself. Of course emphasis throughout the case was on the claim of a "sticking" door; as to whether or not it was apt to stick as claimed by the plaintiff. It must, however, not be forgotten, as pointed out in the various extracts in the plaintiff's brief from the charge, that the jury were told, I believe plainly, what was the rule of care to be exercised by the defendants. Having been told that, then the jury were to decide whether under all the circumstances the defendants were negligent as a question of fact. As the plaintiff points out, it was the "concurrence of the omissions claimed which was the life blood of the plaintiff's case." In other words,

the parties tried the case on the theory that the plaintiff could not recover on the proof of any one of the omissions claimed but must prove all.

The defendants also contend that the failure to charge the defendants' seventh request to charge was erroneous and fatal. This request was: "The failure on the part of the plaintiff to produce as a witness the engineers or person who took measurements at the defendants' hotel, entitle you to infer that his testimony, if given, would have been antagonistic to the plaintiff's own story."

The defendants, nine months after the injury suffered, had the door in question examined by some engineers and builders, who testified that the door was not defective as claimed. The defendants also offered evidence that the plaintiff, ten months after the injury, had the door examined. This was about May, 1947. Such witness was not produced by the plaintiff.

The court inadvertently failed to charge, if not in the language of the charge, in any event in words conveying a similar idea, although it is questionable that the request, in the light of the evidence, should have been given as worded. Is this failure to charge as requested fatal? The knowledge of the person who was not produced would have been as to the condition of the door ten months after the injury on August 15, 1946. Failure to produce him would have justified an inference that the door in May, 1947, as he then found it, was in reasonably good condition. That would be the extent of the inference to be drawn. He had no information or knowledge as to the condition of the door at the time the plaintiff was injured. It did not justify an inference that "his testimony, if given, would have been antagonistic to the plaintiff's own story," which concerned a condition ten months before the witness in question viewed it. It would seem, therefore, that the omission to charge was not necessarily harmful to the defendants.

Another claim of the defendants is that the verdict is excessive and should be set aside unless substantially reduced. Upon her injury, which consisted of a severing of the arteries and nerves of the under part of the plaintiff's left arm above the elbow, the plaintiff was rushed to a hospital in Willimantic. She was given a transfusion and operated on. She was discharged August 17, 1946. Shortly thereafter, in order to secure expert treatment for the severed nerves of the arm, the plaintiff entered the New

Haven Hospital for an operation. She stayed about ten days. In the next month, September, 1946, she again entered the New Haven Hospital for further treatment, remaining about twelve days. Until these operations were performed she had no sensation in the arm. That sensation has been restored. She carried her arm in a sling for two months and was out of school for about a month. She is righthanded. At time of trial there was a 50 per cent disability in the arm and hand. It will consistently improve but she will ultimately have a 20 per cent permanent impairment in use. Very likely there will be a slight shortage of the arm and its circumference is not presently as large as that of the right arm. It is also scarred on the under portion. The total medical expenses, with little likelihood of further medical expense, were $1064. The award of the jury was $10,000.

"Each case depends so much upon its own facts that an amount justified in one would not necessarily be an indication of how much ought to be allowed in another." *Dunstan v. Round Hill Dairy, Inc.*, 128 Conn. 300, 303. A jury award should be scrutinized "to see if it might reasonably be considered to have been the result of emotion rather than sound judgment." *Goldberg v. Mertz*, 123 Conn. 308, 310.

I have examined other cases where the claims of excessive verdicts or judgments have been made, for assistance in passing on this motion in this case. They are of some help, yet each case depends upon its own circumstances. There is no arbitrary rule which can be taken as a guide. The jury allowed the plaintiff approximately $9000 by way of general damages, an amount which struck me at the time as being too high. No doubt the jury became quite sympathetic with this plaintiff of twelve years of age.

Accordingly, the verdict is set aside unless within three weeks from the time plaintiff's counsel shall receive a copy of this memorandum a remittitur of $2000 is filed by the plaintiff. If such remittitur is filed, judgment shall enter for $8000.